# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal Action No.: 7:14-cr-00337-JMC-1 |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Willie Frank Gibson, Jr., ) | |
| ) | |
| Defendant. ) | |

Defendant Willie Frank Gibson, Jr. ("Gibson") is a prisoner currently serving a sentence of one-hundred twenty (120) months in the Federal Bureau of Prisons ("BOP"). (ECF No. 117.)

This matter is before the court on Gibson's letter construed as a *pro se* Motion for Compassionate Release (ECF No. 135) under 18 U.S.C. § 3582.[1] Specifically, Gibson requests the court to reduce his sentence due the ongoing COVID-19 pandemic and his diagnosed condition of Hepatitis-C. (ECF No. 135 at 2.) For the reasons stated below, the court **DENIES** Gibson's Motion for Compassionate Release (ECF No. 135) without prejudice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 13, 2014, the Grand Jury named Gibson in an Indictment (ECF No. 28) containing five (5) counts, but only named Gibson in the following four (4) counts:

(1) That beginning at a time unknown to the Grand Jury, but beginning at least in 2013, and continuing thereafter, up to and including the date of this Indictment, in the District of South Carolina and elsewhere . . . **WILLIE FRANK GIBSON, JR.** [and another named Defendant,][2] knowingly and intentionally did combine, conspire, agree and have tacit understanding with each other and with others, both known and unknown to the Grand Jury, to possess with intent to distribute and to distribute cocaine, a Schedule II controlled substance;

---

[1] Motions under this section are called Motions for Compassionate Release. *See United States v. Pack*, No. 2:17-cr-20002-10, 2020 WL 2174447, at *1 (W.D. Tenn. May 5, 2020).

[2] The other named Defendant was Rickey Glenn. (ECF No. 28.)

1

    (a) **WILLIE FRANK GIBSON, JR.** . . . conspired to possess with the intent to distribute and to distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B);
   All in violation of Title 21, United States Code, Section 836.

. . .

    (2) That on or about January 22, 2014, in the District of South Carolina and elsewhere, the Defendant, **WILLIE FRANK GIBSON, JR.,** knowingly and intentionally did use a communication facility, that is, a telephone, to facilitate the commission of a felony under the Controlled Substances Act, to wit: conspiracy to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;
   All in violation of Title 21, United States Code, Section 843(b).

. . .

    (3) That on or about January 24, 2014, in the District of South Carolina and elsewhere, the Defendant, **WILLIE FRANK GIBSON, JR.,** knowingly and intentionally did use a communication facility, that is, a telephone, to facilitate the commission of a felony under the Controlled Substances Act, to wit: conspiracy to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;
   All in violation of Title 21, United States Code, Section 843(b).

. . .

    (4) That on or about April 10, 2014, in the District of South Carolina, the Defendant, **WILLIE FRANK GIBSON, JR.,** having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm and ammunition, that is a Taurus 9 millimeter pistol and 9 millimeter ammunition, all of which had been shipped and transported in interstate commerce;
   In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 924(e).

(ECF No. 28.)

On October 6, 2014, a Plea Agreement was made between the United States and Gibson, whereby:

> [t]he Defendant [Gibson] agree[d] to plead guilty to Count 1 of the Indictment [then] pending, which charge[d] 'Conspiracy to Possess with the Intent to Distribute and Distribute 500 grams or more of cocaine,' a violation of Title 21, United States Code, § 841(a)(1), (b)(1)(B), and 846.

(ECF No. 96 at 1.)

2

On October 6, 2014, the court accepted Gibson's Guilty Plea and on December 11, 2014, sentenced him to one-hundred twenty (120) months imprisonment and, upon release, a supervised release term of eight (8) years. (ECF Nos. 97 and 117.) On March 11, 2020, during Gibson's imprisonment, the World Health Organization characterized COVID-19, also known as the new coronavirus, as a pandemic. On March 13, 2020, the President of the United States officially declared a national emergency due to the virus.

On May 1, 2020, Gibson filed a Request for Administrative Remedy requesting release due to concerns related to coronavirus and his alleged medical conditions. (ECF No. 147-2.) On May 4, 2020, Gibson's request was denied because he was deemed "ineligible" based on his "prior violence [in] 2009," attempted "escape from prison," and "[he] cannot be referred for home confinement as [he] advised [he was] homeless." (ECF No. 147-2.) On May 11, 2020, Gibson filed a Memorandum to the BOP to appeal the original denied request. (ECF No. 135-1.) On June 29, 2020, Gibson then filed the Motion for Compassionate Release with the court. (ECF No. 135.) On June 30, 2020, Gibson was appointed a public defender. (ECF No. 137.) On July 28, 2020, Gibson's public defender Lora Blanchard submitted a Memorandum in Support of Gibson's Motion. (ECF No. 143.) On August 10, 2020, the Government then filed a Response in Opposition to Gibson's Motion. (ECF No. 147.)

## II.     LEGAL STANDARD

The district court is free to modify a term of imprisonment upon motion by the defendant after he has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on his behalf, or thirty (30) days has elapsed from receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009). If the defendant has met the exhaustion

requirement, the court may

> reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unnerved portion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *See United States v. Poulios*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020); *see also United States v. Crawford*, No. 2:03-cr-10084, 2020 WL 2537507, at *1 (W.D. Va. May 19, 2020). The courts have been given authority to waive the exhaustion requirements at their discretion due to COVID-19, however the court can still deny the defendant's request for release. *See Poulios*, 2020 WL 1922775, at *1. As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

### III.   ANALYSIS

1. *Exhaustion of Administrative Remedies*

The BOP requires proper exhaustion of its administrative remedies and the process is as follows: (1) file the request with the BOP; (2) receive approval or denial from the warden of the facility; (3) if the request is denied, then submit an appeal to the BOP; then (4) file a motion for release with the court.[3] However, as previously noted, the district court is free to modify a term of imprisonment upon motion by the defendant if thirty (30) days has elapsed from receipt of such a

---

[3] *See Administrative Remedy Program*, https://www.bop.gov/policy/progstat/1330_018.pdf (last visited Aug. 12, 2020).

request by the warden of the defendant's facility. 18 U.S.C. § 3582(c)(1)(A); *see also Celedon*, 353 F. App'x at 280.

On May 1, 2020, Gibson filed a Request for Administrative Remedy requesting release due to concerns related to coronavirus and his alleged medical condition. (ECF No. 147-2.) On May 4, 2020, Gibson's request was denied because he was deemed "ineligible" based on his "prior violence [in] 2009," attempted "escape from prison," and "[he] cannot be referred for home confinement as [he] advised [he was] homeless." (ECF No. 147-2.) On May 11, 2020, Gibson filed a Memorandum to the BOP requesting compassionate release and a reduction in his sentence, stating that he is at a higher risk for COVID-19 because he "is diagnosed with Hepatitis C" and has proposed a release plan "to live with [his] brother during Home Confinement." (ECF No. 135-1 at 2.)

It has been over thirty (30) days since May 11, 2020, and therefore the court is free to modify a term of imprisonment upon motion by the defendant since the warden has not responded to the request. *See Celedon*, 353 F. App'x at 280. The court finds that Gibson has exhausted his administrative remedies since it has been over thirty (30) days since Gibson has submitted a request for compassionate release. *Id.*

2. *Compassionate Release*

A defendant must bear the burden of proof before a court can grant a compassionate release motion. *Cf. United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). The court may modify the term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In light of COVID-19, courts have construed this pandemic and the severe illnesses as "extraordinary and compelling." *E.g.*, *United States v. Salvagno*, No. 5:02-cr-51, 2020 WL 3410601, at *5 (S.D.N.Y. Apr. 23, 2020.)

Gibson asserts that he is susceptible to COVID-19 due to his medical issues, paired with the current outbreak at the facility where he is housed, which provides the extraordinary and compelling reasons that warrant his compassionate release. (ECF No. 135.) Gibson states that he has "Hep-c" and that "[his] liver damage" makes him more susceptible to complications from COVID-19. (ECF No. 135 at 2.) USP Atlanta, where Gibson is housed, currently has seven (7) inmates and eight (8) staff that have confirmed, active COVID-19 cases.[4] USP Atlanta has a total of one-thousand seven-hundred thirty (1,730) inmates where one hundred fourteen (114) inmates are at the Camp where Gibson currently is housed.[5]

The Center for Disease Control ("CDC") has released guidance[6] regarding what medical conditions render people more susceptible to COVID-19. Based on this guidance, Gibson might be at an increased risk to contract COVID-19 due to his Hepatitis-C. The CDC recommends that a person with liver disease should continue to "take medicines exactly as prescribed . . . make sure that [they] have at least a 30-day supply . . . [and consult a] healthcare provider if [they] have concerns about [their] condition or feel sick."[7] While Defense Counsel contends that Gibson has a "re-attached retina and glaucoma . . . [and] [h]is eye sight is deteriorating," there have not been any medical records presented to support this contention; rather, the only medical records presented to the court are confirmation of Gibson's Hepatitis-C. (ECF Nos. 143 and 135-8.)

---

[4] *Federal Bureau of Prisons* (*COVID-19 Coronavirus*), https://www.bop.gov/coronavirus/ (last visited Aug. 17, 2020).
[5] *Federal Bureau of Prisons* (*USP Atlanta*), https://www.bop.gov/locations/institutions/atl/ (last visited Aug. 7, 2020).
[6] *Center for Disease Control and Prevention* (*Groups at Higher Risk for Severe Illness*), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 17, 2020).
[7] *Center for Disease Control and Prevention* (*Groups at Higher Risk for Severe Illness*), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 17, 2020).

Therefore, while the court is sympathetic to Gibson's medical conditions, the court finds that Gibson has failed to meet his burden of presenting "extraordinary and compelling" reasons for his release.

3. *Significant Criminal History*

Ultimately, when deciding whether a defendant should be released under § 3582, the court must consider whether Gibson is a danger to the safety of any other person or the community. *See* 18 U.S.C. § 3142(g); *United States v. Ennis*, EP-02-cr-1430-PRM-1, 2020 WL 2513109, at *7 (W.D. Tex. June 17, 2020). The court is to assess the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

In 2014, Gibson pleaded guilty to "Conspiracy to Possess with the Intent to Distribute and Distribute 500 grams or more of cocaine." (ECF No. 96.) Prior to pleading guilty, investigations, through two anonymous tips, revealed that between 2012 and 2013, Gibson "was a major drug trafficker . . . [and] had a network of four or five male individuals who were selling cocaine [he] supplied." (ECF No. 1-1 at 2.) Investigations also revealed that Gibson "confided [to a confidential source] that he (Gibson) was selling cocaine" in 2013; the confidential source eventually started to sell cocaine for Gibson. (ECF No. 1-1 at 3–7.)

While Gibson has not been deemed a Career Offender under U.S.S.G § 4B1.1, the Presentence Investigation Report found that Gibson has a "criminal history [that] has been continuous since his first adult arrest at the age of 17 in 1980. He has been arrested over 25 different occasions and has 50 separate convictions. He has had 5 separate probation revocations and 4 separate parole revocations." (ECF No. 112-2 at 2–3.) Gibson's total offense level was twenty-one

(21) with a criminal history score of five (5) out of ten (10). (ECF No. 118.) Gibson was sentenced to serve one-hundred twenty (120) months, of which he has served ninety-four (94) months. (ECF No. 135-1 at 3.) Gibson's significant criminal history involving drug possession and drug trafficking offenses, along with other minor criminal offenses weigh against his release. (*Id.*) Therefore, the court concludes that Gibson's criminal history and characteristics do not allow for him to meet the criteria for extraordinary relief.

Additionally, Gibson requests to be confined at his brother's house in Greenville, South Carolina, which is where Gibson was arrested and investigated for trafficking drugs. (ECF No. 1.) In the court's view, Gibson presents a concern that he may reoffend if he is released. *See United States v. Feiling*, 3:19-cr-112, 2020 WL 1821457 (E.D. Va. Apr. 10, 2020) (denying motion for compassionate release in part because petitioner committed offense while at home and wanted to return home to finish sentence); *see also United States v. Hylander*, No. 18-cr-60017, 2020 WL 1915950, at 3 (S.D. Fla. Apr. 20, 2020) (denying motion for compassionate release because "defendant proposes to be released at home with wife and brother-in-law, which is precisely the location in which the offense for which he was convicted was committed, and presents a concern that Defendant will reoffend."). Thus, the court determines that the nature and seriousness of any danger Gibson may pose to the community prevents the granting of his request.

### IV.     CONCLUSION

Based on the above, the court **DENIES** Gibson's Motion for Compassionate Release (ECF No. 135) without prejudice.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 19, 2020
Columbia, South Carolina